**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **MATTHEW TOTTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | 12-cv-2094 JAR/JPO |
| | ) | |
| **ASSET MANAGEMENT** | ) | |
| **PROFESSIONALS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, MATTHEW TOTTLE, by and through his attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for his complaint against the Defendant, ASSET MANAGEMENT PROFESSIONALS, LLC, Plaintiff states as follows:

### I.    PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter, "FDCPA"), 15 U.S.C. §1692, et seq., the Telephone Consumer Protection Act (hereinafter, "TCPA"), 47 U.S.C. §227, et seq., and for Defendant's violation of the Kansas Consumer Protection Act, K.S.A. 50-623 et seq., (hereinafter, "KCPA").

### II.    JURISDICTION & VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Jurisdiction arises under the TCPA pursuant to 28 U.S.C. §1331.

4.      Jurisdiction arises under the KCPA pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

1

### III.   PARTIES

6.     MATTHEW TOTTLE, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Russell, County of Russell, State of Kansas

7.     The debt that Plaintiff was allegedly obligated to pay was a debt Plaintiff originally allegedly owed to Citibank.

8.     The debt that Plaintiff originally allegedly owed to Citibank was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure.

9.     Upon information and belief, DRS purchased, acquired and/or otherwise obtained the debt that Plaintiff originally allegedly owed Citibank.

10.     Upon information and belief, DRS assigned, transferred and/or otherwise sent the debt that Plaintiff originally allegedly owed Citibank to ASSET MANAGEMENT PROFESSIONALS, LLC (hereinafter, "Defendant") for collections.

11.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

12.     At all relevant times, Plaintiff was a "consumer" as that term is defined by K.S.A. §50-624(b).

13.     Defendant is a business entity engaged in the collection of debt within the State of Kansas. Defendant is registered as a limited liability company in the State of Georgia.

14.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

15.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

16.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

17.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

18.     At all relevant times, Defendant acted as a "supplier" as that term is defined by K.S.A. §50-624(l).

19.     At all relevant times, the debt on which Defendant was attempting to collect was relative to a "consumer transaction" which Plaintiff had allegedly entered into as defined by K.S.A. §50-624(c).

20.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV.   <u>ALLEGATIONS</u>

### <u>COUNT I: VIOLATION OF THE FDCPA</u>

21.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

22.     In August 2011, Defendant accessed, obtained and/or otherwise viewed Plaintiff's credit report.

23.     In August 2011, at the time Defendant accessed Plaintiff's credit report, the information relative to Plaintiff's residential address on the aforesaid credit report listed Plaintiff's address to be in the City of Russell, State of Kansas.

24.     In August 2011, at the time Defendant accessed Plaintiff's credit report, the information relative to Plaintiff's residential address on the aforesaid credit report did not list Plaintiff's most recent address as being in the State of New Jersey.

25.     In August 2011, Defendant had information in its possession stating that Plaintiff was residing in the City of Russell, County of Russell, State of Kansas.

26.     In August 2011, Defendant was cognizant that Plaintiff was residing in the City of Russell, County of Russell, State of Kansas.

27.     In August 2011, Defendant had information in its possession stating that Plaintiff's residence, as of August 2011,  was not in the State of New Jersey.

28.     In or around August 2011, upon information and belief, Defendant mailed a correspondence to Plaintiff addressed to Plaintiff's putative address in the State of New Jersey.

29.     At the time Defendant sent the aforesaid correspondence to Plaintiff's putative address in the State of New Jersey, Defendant was cognizant that Plaintiff did not reside in the State of New Jersey.

30.     On or about August 4, 2011, Defendant initiated a telephone call to Plaintiff.

31.     Upon information and belief, Defendant initiated the aforesaid telephone call to Plaintiff in an attempt to collect a debt he allegedly owed.

32.     Defendant initiated the aforesaid telephone call to Plaintiff's cellular telephone number.

33.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, Defendant did not leave a voicemail message for Plaintiff.

34.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, the caller identification on Plaintiff's cellular telephone listed a telephone number from which Defendant's telephone call had originated.

35.     The aforesaid telephone number listed on Plaintiff's caller identification was Defendant's telephone number.

36.     Plaintiff has never provided Defendant with consent to communicate with him on his cellular telephone number.

37.     Plaintiff has never provided Citibank with consent to communicate with him on his cellular telephone number.

38.     Plaintiff has never provided DRS with consent to communicate with him his cellular telephone number.

39.     At the time Plaintiff allegedly entered into a contract with Citibank, Plaintiff did not have the same cellular telephone number that Plaintiff had in August 2011.

40.     At the time Plaintiff allegedly entered into a contract with Citibank, the cellular telephone number Plaintiff may have provided on the contract with Citibank, if any, was different than Plaintiff's cellular telephone number as of August 2011.

41.     On or about August 5, 2011, Defendant initiated a telephone call to Plaintiff.

42.     Upon information and belief, Defendant initiated the aforesaid telephone call to Plaintiff in an attempt to collect a debt he allegedly owed.

43.     Defendant initiated the aforesaid telephone call to Plaintiff's cellular telephone number.

44.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, Defendant did not leave a voicemail message for Plaintiff.

45.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, the caller identification on Plaintiff's cellular telephone listed a telephone number from which Defendant's telephone call had originated.

46.     The aforesaid telephone number listed on Plaintiff's caller identification was Defendant's telephone number.

47.     On or about August 9, 2011, Defendant initiated at least one (1) telephone call to Plaintiff in a single day.

48.     On or about August 9, 2011, Defendant initiated five (5) telephone calls to Plaintiff in a single day.

49.     Upon information and belief, on or about August 9, 2011, Defendant initiated the aforesaid telephone calls to Plaintiff in an attempt to collect a debt he allegedly owed.

50.     On or about August 9, 2011, Defendant initiated the aforesaid telephone calls to Plaintiff's cellular telephone number.

51.     On or about August 9, 2011, Defendant did not leave a voicemail message for Plaintiff at the time it initiated the aforesaid telephone calls to Plaintiff's cellular telephone.

52.     At the time Defendant initiated the aforesaid telephone calls to Plaintiff, the caller identification on Plaintiff's cellular telephone listed a telephone number from which Defendant's telephone calls had originated.

53.     At the time Defendant initiated the aforesaid telephone calls to Plaintiff, the telephone number listed on Plaintiff's caller identification was Defendant's telephone number.

54.     Prior to November 15, 2011, Plaintiff had not engaged in a telephone conversation with Defendant.

55.     Prior to November 15, 2011, Defendant had not left a voicemail message for Plaintiff.

56.     Prior to November 15, 2011, Plaintiff had not received a communication from Defendant relative to the debt on which Defendant was attempting to collect.

57.     On or about November 15, 2011, Defendant initiated a telephone call to Plaintiff in an attempt to collect a debt Plaintiff allegedly owed.

58.     Defendant initiated the aforesaid telephone call to Plaintiff's cellular telephone number.

59.     On or about November 15, 2011, Defendant left a voicemail message for Plaintiff on his cellular telephone number.

60.     In the aforesaid voicemail message, Defendant stated that it was a debt collector attempting to contact Plaintiff.

61.     Defendant further informed Plaintiff that it was imperative that Plaintiff contact Defendant.

62.     Defendant then left a telephone number at which Plaintiff could contact Defendant.

63.     At the time Defendant initiated the aforesaid telephone call to Plaintiff, the caller identification on Plaintiff's cellular telephone listed a telephone number from which Defendant's telephone call had originated.

64.     The aforesaid telephone number listed on Plaintiff's caller identification was Defendant's telephone number.

65.     Plaintiff heard the voicemail message left by Defendant.

7

66.     The aforesaid voicemail message heard by Plaintiff was Defendant's initial communication with Plaintiff.

67.     At no time during the course of the aforesaid voicemail message did Defendant inform Plaintiff that unless he disputed the validity of the debt on which Defendant was attempting to collect, or any portion thereof, within thirty days, Defendant would assume the debt to be valid.

68.     Defendant has not provided to Plaintiff, within five (5) days of its initial communication with Plaintiff to collect the alleged debt, with written confirmation of the amount of the debt, the name of the creditor to whom the debt is allegedly owed or a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

69.     On or about November 16, 2011, Plaintiff initiated a telephone call to Defendant.

70.     Plaintiff initiated the aforesaid telephone call to Defendant at the telephone number that appeared on Plaintiff's caller identification when Defendant had initiated a telephone call to Plaintiff on the previous day.

71.     The telephone call Plaintiff initiated to Defendant was not made from Plaintiff's cellular telephone.

72.     Plaintiff then engaged in a telephone conversation with Defendant wherein Plaintiff informed Defendant that he had received a telephone call from Defendant.

73.     Defendant then informed Plaintiff that it was calling him relative to a debt he owed to Citibank.

74.     At no time during the course of the aforesaid telephone conversation did Defendant inform Plaintiff that unless the consumer, within thirty days after receipt of the notice,

8

disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

75.     During the course of the aforesaid telephone conversation, Defendant's duly authorized representative informed Plaintiff that it had mailed information about the debt to Plaintiff at his putative address in the State of New Jersey.

76.     Defendant then asked Plaintiff if he had received the information Defendant had allegedly mailed him.

77.     Plaintiff informed Defendant that he did not receive the information Defendant had allegedly sent to him.

78.     Plaintiff further informed Defendant " I have not lived there [the State of New Jersey] in 3 years, 4 years.".

79.     During the course of the aforesaid telephone conversation, Defendant asked Plaintiff if he was able to make payments towards the debt on which Defendant was attempting to collect.

80.     Plaintiff told Defendant that he was not able to make payments as he was unemployed.

81.     As of November 16, 2011, Plaintiff was unable to find work.

82.     As of November 16, 2011, Plaintiff was not receiving a salary.

83.     As of November 16, 2011, as a result of Plaintiff's financial circumstances and his inability to find work, Plaintiff was in the process of starting a business to repair computers.

84.     As of November 16, 2011, Plaintiff had not yet generated any income from his business.

85.     As of November 16, 2011, Plaintiff had no customers at the business he was in the process of starting.

86.     As of November 16, 2011, at the time Plaintiff informed Defendant he was unemployed, Plaintiff was indeed unemployed.

87.     As of on or about November 16, 2011, subsequent to the course of the aforesaid telephone call, Defendant was aware that Plaintiff was not residing in the State of New Jersey.

88.     As of on or about November 16, 2011, subsequent to the course of the aforesaid telephone call, Defendant was aware that it had mailed a correspondence to Plaintiff at an address at which Plaintiff no longer residing.

89.     As of on or about November 16, 2011, subsequent to the course of the aforesaid telephone call, Defendant was aware that it had not mailed a correspondence to Plaintiff at his current address in the State of Kansas.

90.     As of on or about November 16, 2011, subsequent to the course of the aforesaid telephone call, Defendant was aware Plaintiff never received a correspondence from Defendant that it allegedly sent to Plaintiff's former address in the State of New Jersey.

91.     At no time subsequent to November 16, 2011, did Defendant mail a correspondence to Plaintiff at his address in the State of Kansas.

92.     To date, Defendant has not mailed a correspondence to Plaintiff at his address in the State of Kansas.

93.     On or about November 17, 2011, Defendant initiated a telephone call to Plaintiff in a further attempt to collect the debt Plaintiff allegedly owed.

94.     Defendant initiated the aforesaid telephone call to Plaintiff's cellular telephone number.

95.     On or about November 17, 2011, Plaintiff was residing in the City of Russell, County of Russell, State of Kansas.

96.     On or about November 17, 2011, Plaintiff was residing in the Central Standard Time zone.

97.     On or about November 17, 2011, Defendant initiated a telephone call to Plaintiff prior to 8:00 a.m., Central Standard Time.

98.     On or about November 17, 2011, Plaintiff received a telephone call from Defendant prior to 8:00 a.m., Central Standard Time.

99.     On or about November 17, 2011, at the time Defendant initiated the aforesaid telephone call to Plaintiff, prior to 8:00 a.m., Central Standard Time, Defendant left a voicemail message for Plaintiff.

100.    In the aforesaid voicemail message, Defendant's duly authorized representative identified herself as "J.P."

101.    In the aforesaid message, Defendant's duly authorized representative stated "I have just seen that you called in yesterday and that you indicated that you were not employed and I know that is not the case."

102.    Defendant then stated that it was imperative that Plaintiff contact Defendant that same day.

103.    Defendant's duly authorized representative then stated "[t]he date is November the seventeenth and I need to hear from you today."

104.    Defendant then left a telephone number at which Plaintiff could contact Defendant.

105.    Plaintiff heard the contents of the voicemail message left by Defendant.

106.    As of on or about November 17, 2011, Plaintiff was

107.    Defendant's representations to Plaintiff, on the aforesaid voicemail message, as delineated above, had the effect of conveying to an unsophisticated consumer that Plaintiff was lying to Defendant about his employment status.

108.    Defendant's statements, as delineated above, are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

109.    The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for his non-payment of the debt he allegedly owed Citibank.

110.    The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

111.    The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

112.    On or about November 18, 2011, Plaintiff initiated a telephone call to Defendant and engaged in a telephone conversation with Defendant.

113.    The call Plaintiff initiated to Defendant was not made from Plaintiff's cellular telephone.

114.    During the course of the aforesaid telephone call, Plaintiff confronted Defendant regarding the contents of the voicemail message Defendant had left for Plaintiff wherein Defendant states that Plaintiff had lied to Defendant about his employment status.

115.    During the aforesaid telephone call, Plaintiff also confronted Defendant regarding the fact that Defendant had initiated a telephone call to Plaintiff prior to 8:00 a.m., Central Standard Time.

116.     During the aforesaid telephone call, Defendant acknowledged that it was aware Plaintiff was living in the State of Kansas.

117.     During the aforesaid telephone call, Defendant informed Plaintiff that on August 4, 2011,  it accessed, obtained and/or otherwise viewed Plaintiff's credit report.

118.     Defendant, by informing Plaintiff that on August 4, 2011, it accessed, obtained and/or otherwise viewed Plaintiff's credit report, confirmed that as August 4, 2011, it was cognizant of Plaintiff's residency in the State of Kansas.

119.     Defendant, by informing Plaintiff that on August 4, 2011, it accessed, obtained and/or otherwise viewed Plaintiff's credit report, confirmed that despite it being aware that Plaintiff resided in the State of Kansas, in or around August 2011, Defendant proceeded to send correspondence to Plaintiff's former address in the State or New Jersey.

120.     During the course of the November 18, 2011, telephone call between the parties, Defendant told Plaintiff that the debt he owed to Citibank was the subject of a judgment that had been obtained against him.

121.     Upon information and belief, the judgment to which Defendant was referring was obtained against Plaintiff in the Superior Court of New Jersey, Morris County, in a matter captioned as *CSGA, LLC v. Matthew Tottle,* with case number DC-007262-06 (hereinafter, "Morris County matter").The debt on which Defendant was attempting to collect from Plaintiff was the same debt relative to the judgment entered against Plaintiff in the Morris County matter.

122.     The judgment in the Morris County matter was obtained on February 1, 2007.

123.     The judgment in the Morris County matter was obtained against Plaintiff for a total amount of $3,367.03.

124.    According to the lawsuit filed against Plaintiff in the Morris County matter, the debt Plaintiff allegedly owed was to accrue interest at a rate of 24.99%.

125.    During the course of the aforesaid telephone call between Plaintiff and Defendant, Plaintiff told Defendant that he intended to file a motion to vacate the judgment.

126.    Plaintiff further stated to Defendant that he was never served with the complaint and summons in the Morris County matter and as a result thereof he intended to file a motion to vacate the judgment obtained against him.

127.    Defendant informed Plaintiff that the balance relative to the judgment obtained against him on which Defendant was attempting to collect was now $3,613.79.

128.    Defendant then told Plaintiff that the debt on which it was attempting to collect was accruing interest in the amount of $246.76 a month.

129.    Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 a month was false, deceptive and/or misleading given that even if the aforesaid debt was accruing interest, the debt on which Defendant was attempting to collect would accrue interest at a rate of less than $246.76 a month.

130.    Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 a month was false, deceptive and/or misleading given that according to the lawsuit filed against Plaintiff in the Morris County matter, the debt on which Defendant was attempting to collect was to accrue interest only at a rate of 24.99%.

131.    Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 a month was false, deceptive and/or misleading given that according to the laws in the State of New Jersey, even if Defendant was attempting to

collect post-judgment interest on the judgment obtained against Plaintiff, the debt on which Defendant was attempting to collect would accrue interest at a rate of less than $246.76 a month.

132.   Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given that even if the aforesaid debt was accruing interest, the debt on which Defendant was attempting to collect would accrue interest at a rate of less than $246.76 a month.

133.   Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given that according to the lawsuit filed against Plaintiff in the Morris County matter, the debt on which Defendant was attempting to collect was to accrue interest only at a rate of 24.99%.

134.   Defendant's representation to Plaintiff that the debt on which it was attempting to collect was accruing interest at rate of $246.76 misrepresented the character, nature and/or legal status of the debt on which Defendant was attempting to collect given according to the laws in the State of New Jersey, even if Defendant was attempting to collect post-judgment interest on the judgment obtained against Plaintiff, the debt on which Defendant was attempting to collect would accrue interest at a rate of less than $246.76 a month.

135.   During the course of the aforesaid telephone conversation, Defendant reminded Plaintiff, on numerous occasions, that a judgment had been obtained against him.

136.   Defendant then told Plaintiff that a judge had signed an Order against him and that Plaintiff was "in contempt of that Order."

137.    Defendant's statement that Plaintiff was in contempt of a court Order had the effect of conveying to an unsophisticated consumer that Plaintiff had committed a crime as a result of having failed to pay the putative judgment entered against him.

138.    Defendant's representation that Plaintiff was in contempt of a court Order further had the effect of conveying to an unsophisticated consumer that Plaintiff could be arrested and/or charged with a criminal penalty for having failed to pay the putative judgment entered against him.

139.    At the time Defendant made the aforesaid statement that Plaintiff was in contempt of a court Order, no such Order had been entered in the Morris County matter dictating that Plaintiff was to be held in contempt of court.

140.    Defendant's representation that Plaintiff was in contempt of a court Order was false, deceptive and/or misleading given that at the time Defendant made the aforesaid representation no Order had been entered in the Morris County matter dictating that Plaintiff was to be held in contempt of court for having allegedly failed to comply with a court Order.

141.    Defendant's representation to Plaintiff that he was in contempt of a court Order was a statement made by Defendant to Plaintiff in an attempt to disgrace Plaintiff.

142.    Defendant's statements as delineated above are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

143.    The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for his non-payment of the debt he allegedly owed Citibank.

144.    The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

16

145.    The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

146.    In its attempts to collect the debt allegedly owed by Plaintiff to Citibank, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

a.    Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

b.    Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

c.    Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

d.    Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A)

e.    Falsely represented or implied that a consumer committed a crime or other conduct in order to disgrace the consumer in violation of 15 U.S.C. §1692e(7);

f.    Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

g.    Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

h.    Failed to comply with the provisions of 15 U.S.C. §1692g(a); and,

i.    Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

147.    As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, MATTHEW TOTTLE, by and through his attorneys, respectfully prays for judgment as follows:

a.   All actual compensatory damages suffered;

b.   Statutory damages of $1,000.00;

c.   Plaintiff's attorneys' fees and costs;

d.   Any other relief deemed appropriate by this Honorable Court.

## COUNT II: VIOLATION OF THE TCPA

148.   Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

149.   Defendant made and/or placed telephone calls to Plaintiff's cellular telephone number, in an effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant.

150.   Defendant willfully and knowingly utilized an automatic telephone dialing system to make and/or place telephone calls to Plaintiff's cellular telephone number, in an effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant

151.   Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by willfully and knowingly utilizing an automatic telephone dialing system to make and/or place telephone calls to Plaintiff's cellular telephone number.

WHEREFORE, Plaintiff, MATTHEW TOTTLE, by and through his attorneys, respectfully prays for judgment as follows:

a.   All actual compensatory damages suffered;

b.   Statutory damages of $500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(B);

c.   Statutory damages of $1500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(C);

> d.     Plaintiff's attorneys' fees and costs; and,
>
> e.     Any other relief deemed appropriate by this Honorable Court.

## COUNT III: VIOLATION OF THE KCPA

152.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

153.     Notice of this action has been provided to the Kansas Attorney General pursuant to K.S.A. §50-634(g).

154.     In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the KCPA, K.S.A. 50-623 et seq., in one or more of the following ways:

> a.     Engaging in any deceptive act or practice in connection with a consumer transaction in violation of K.S.A. §50-626 (a);
>
> b.     Willfully using, in any oral or written representation, an exaggeration, falsehood, innuendo or ambiguity as to a material fact in violation of K.S.A. §50-626 (b)(2);
>
> c.     Willfully failing to state a material fact, or the willful concealment, suppression or omission of a material fact, in violation of K.S.A. §50-626 (b)(3);
>
> d.     Engaging in any unconscionable act or practice in connection with a consumer transaction in violation of K.S.A. §50-627 (a); and,
>
> e.     Otherwise failing to comply with the provisions of the KCPA.

155.     As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, MATTHEW TOTTLE., by and through his attorneys, respectfully prays for judgment as follows:

> a.     All actual compensatory damages suffered;
>
> b.     Statutory damages of $10,000.00 per Defendant's violation of the KCPA;

c.     Plaintiff's attorneys' fees and costs;

d.     Any other relief deemed appropriate by this Honorable Court.

## V.     <u>JURY DEMAND</u>

156.     Plaintiff hereby demands a trial by jury on all issues so triable.

157.     The Plaintiff, MATTHEW TOTTLE, by and through his attorneys, Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

Respectfully submitted,
**MATTHEW TOTTLE**

By:   <u>   s/ D. Matthew Durgin        </u>
          Attorney for Plaintiff

<u>Dated: February 14, 2012</u>

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:   (913) 908-2313
                     (913) 871-4170
Facsimile:   (888) 418-1277
E-Mail:        mdurgin@smithlaw.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MATTHEW TOTTLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ASSET MANAGEMENT** | ) |
| **PROFESSIONALS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

**CERTIFICATION OF ATTORNEY GENERAL NOTIFICATION**

Counsel for Plaintiff, MATTHEW TOTTLE, herby certifies that the Attorney General of

the State of Kansas has been notified of the commencement of this action, as required by K.S.A.

50-634(g).


By: ___s/ D. Matthew Durgin_____
Attorney for Plaintiff

Dated: February 14, 2012

D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:   (913) 908-2313
                   (913) 871-4170
Facsimile:   (888) 418-1277
E-Mail:      mdurgin@smithlaw.us